IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:25 - cv - 55

| | |
|---|---|
| KATHIE B. SUPIK, and JODI FOSTER BALDERRAMA, <br><br> Plaintiffs, <br><br> v. <br><br> WNC INTERNAL MEDICINE, PLLC, OFELIA C. BALTA, M.D., P.A., MARIAN MARTIN BALTA, and OFELIA C. BALTA, M.D., <br><br> Defendants. | COMPLAINT |

Plaintiffs Kathie B. Supik, ("**Supik**") and Jodi Foster Balderrama ("**Balderrama**"), complaining of Defendants WNC Internal Medicine, PLLC, ("**WNCIM**"), Ofelia C. Balta, M.D., P.A., (the "**Practice**"), Marian Martin Balta ("**Mr. Balta**"), and Ofelia C. Balta, M.D, ("**Dr. Balta**") (collectively, the "**Defendants**"), allege and state as follows:

### Parties, Jurisdiction and Venue

1. Supik is an adult citizen of, and domiciled in, Jackson County, North Carolina.

2. Balderrama is an adult citizen of, and domiciled in, Rabun County, Georgia.

3. WNCIM is a North Carolina professional limited liability company with its principal place of business in Jackson County, North Carolina.

4. The Practice is a North Carolina professional corporation with its principal place of business in Jackson County, North Carolina.

5. Mr. Balta is an adult citizen of, and domiciled in, Jackson County, North Carolina.

6. Dr. Balta is an adult citizen of, and domiciled in, Jackson County, North Carolina.

7. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

8. The amount in controversy exceeds $25,000.

9. This Court has jurisdiction over and is the proper division for this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (the "**FLSA**").

10. Plaintiffs' claims for violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq*. ("**NCWHA**") are based on the statutory law of the State of North Carolina. Plaintiffs' claims for Breach of Contract, as discussed herein, are based on North Carolina law. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same common nucleus of operative facts as the FLSA claims.

## FACTS

11. WNCIM is a health practice in Jackson County, North Carolina, operating at 98 Cope Creek Road, Ste A-B, Sylva, North Carolina (the "**Medical Office**"). WNCIM, through nurse practitioners and medical providers, provides primary care services including health and wellness visits, lab and radiology testing and review, and treatment for specific ailments ("**Primary Care Services**").

12. The Practice is a professional corporation offering aesthetic services and functional medicine (i.e. bioidentical hormones and hormone replacement therapy) alongside Botox, Dysport, fillers (i.e. Radiesse, Juvederm, and Restylane) and Platelet Rich Plasma (PRP) ("**Aesthetic Services**").

13. Dr. Balta is the supervising physician for both WNCIM and the Practice.

14. WNCIM and the Practice both provide their respective services from the Medical Office.

15. The same administrative staff operate WNCIM and the Practice, including scheduling, patient interactions, and billing.

16. Dr. Balta and Mr. Balta operated WNCIM and the Practice during the entirety of Defendants' employment of Plaintiffs, including actively managing employees of both entities, participating in management decisions for both entities, and exerting operational control over both entities.

17. Dr. and Mr. Balta had and exercised their authority to hire, fire, supervise, direct the work of, control schedules and conditions of employment, determine rates of pay, and maintain employment records of WNCIM and Practice employees.

18. Specifically, Dr. Balta, as owner of WNCIM and the Practice:

   a. Actively managed and participated in employee personnel decisions;

  b. Exerted control over employees with respect to terms and conditions of employment;

  c. Exerted control over employees with respect to hiring, firing, discipline, schedules, working conditions, rates and method of wage payment, and the maintenance of employment records; and

  d. Worked with Mr. Balta to determine, approve, and manage employee personnel decisions, wages, and maintain employment records.

19. Specifically, Mr. Balta:

  a. Actively managed and participated in employee personnel decisions;

  b. Exerted control over employees with respect to terms and conditions of employment;

  c. Exerted control over employees with respect to hiring, firing, discipline, schedules, working conditions, rates and method of wage payment, and the maintenance of employment records; and

  d. Worked with Dr. Balta to determine, approve, and manage employee personnel decisions, wages, and maintain employment records.

20. WNCIM and the Practice operate as joint employers for purposes of the FLSA. Specifically, WNCIM and the Practice operate such that:

  a. Both entities share the power to direct, control, or supervise employees;

  b. Both entities determine, share, or allocate the power to, directly or indirectly, hire or fire employees or modify the terms of employment of employees;

  c. Since 2020, the Practice has always operated from the same location and in conjunction with WNCIM;

  d. The services offered by WNCIM and the Practice are performed at the same Medical Office;

  e. The Practice is under the control of WNCIM, Dr. Balta, and Mr. Balta;

  f. Both entities share functions ordinarily handled by an employer, including, but not limited to, handling payroll, providing workers' compensation insurance, paying payroll taxes, providing facilities, and certain materials and tools necessary to perform work;

g. The Aesthetic Services offered by the Practice are listed on WNCIM's website as if WNCIM itself offers and provides those services;

h. Employees perform work for each entity interchangeably; and

i. Dr. and Mr. Balta supervise work performed at both entities interchangeably.

21. Defendants operate an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

## FACTS
### (Jodi Balderrama)

22. On or about January 20, 2020, Balderrama began working as an employee for Defendants.

23. On or about April 27, 2020, Balderrama and WNCIM entered into an Employment Agreement (the "**Balderrama Agreement**"). The Balderrama Agreement is hereby incorporated as if fully set forth.

24. Under the Balderrama Agreement, WNCIM was to pay Balderrama a commission of 33% of gross billings for all Primary Care Services Balderrama performed as a Nurse Practitioner for WNCIM.

25. In or around June or July 2021, Dr. Balta began offering aesthetic and beauty treatment services using the Practice.

26. At or around that time, Balderrama began providing Aesthetic Services for the Practice in addition to providing Primary Care Services through WNCIM.

27. Balderrama provided services for both WNCIM and the Practice in the same building.

28. WNCIM only paid Balderrama on a commission basis.

29. If Balderrama's commissions were less than the statutory minimum wage, WNCIM did not pay Balderrama to ensure that she was paid minimum wage for the hours she actually worked.

30. WNCIM did not pay Balderrama at all for services performed or hours worked during the first several weeks of her employment.

31. WNCIM did not pay Balderrama overtime at any point during her employment.

32. On average, Balderrama provided hands-on Primary Care Services for forty hours per week and worked an additional twenty hours, more or less, per week completing charts and administrative paperwork in connection with those services.

33. On average, Balderrama provided Aesthetic Services for ten hours per week, more or less, in addition to her Primary Care Services.

34. In total, Balderrama worked approximately 70 hours per week, more or less, on average for Defendants throughout her employment.

35. Defendants did not pay Balderrama for her hours worked in excess of forty hours per week.

36. WNCIM often failed to pay Balderrama 33% of the gross amount billed for her Primary Care Services provided.

37. For example, WNCIM did not pay Balderrama any wages for any services she provided if WNCIM was not reimbursed by an insurance company for those services.

38. When WNCIM did not pay Balderrama her commissions for her services, it did not pay her any wages at all. Thus, WNCIM repeatedly failed to pay Balderrama any wages for her work.

39. In or around December 23, 2024, Balderrama gave Defendants 45 days' notice of her intent to resign her employment.

40. Within one week of Balderrama providing her notice of resignation, Defendants terminated her employment.

41. As of the date of this Complaint, Defendants have refused and failed to pay Balderrama's unpaid commissions for services provided.

42. Defendants knew or should have known that their failure to pay wages constituted a legal violation of applicable law.

## **FACTS**
### **(Kathie Supik)**

43. On or around August 10, 2021, Supik and WNCIM entered into an Employment Agreement (the "**Supik Agreement**"). The Supik Agreement is hereby incorporated as if fully set forth.

44. Thereafter, Supik begam working as an employee of Defendants.

5

45. Under the Supik Agreement, Defendants were to pay Supik a commission of 33% of gross billings for all Primary Care Services Supik performed as a Nurse Practitioner for Defendants.

46. Supik immediately began providing Aesthetic Services for the Practice in addition to providing Primary Care Services through WNCIM.

47. Supik provided services for both WNCIM and the Practice in the same building.

48. WNCIM only paid Supik on a commission basis.

49. If Supik's commissions were less than the statutory minimum wage, WNCIM did not pay Supik to ensure that she was paid minimum wage for the hours she actually worked.

50. WNCIM did not pay Supik at all for services performed or hours worked during the first several weeks of her employment.

51. WNCIM did not pay Supik overtime at any point during her employment.

52. On average, Supik provided hands-on Primary Care Services for forty hours per week and worked an additional fifteen hours, more or less, per week completing charts and administrative paperwork in connection with those services.

53. On average, Supik provided Aesthetic Services for ten hours per week, more or less, in addition to her Primary Care Services.

54. In total, Supik worked approximately 65 hours, more or less, per week on average for Defendants throughout her employment.

55. Defendants did not pay Supik for her hours worked in excess of forty hours per week.

56. WNCIM often failed to pay Supik 33% of the gross amount billed for her Primary Care Services provided.

57. For example, WNCIM did not pay Supik any wages for any services she provided if WNCIM was not reimbursed by an insurance company for those services.

58. When WNCIM did not pay Supik her commissions for her services, it did not pay her any wages at all. Thus, WNCIM repeatedly failed to pay Balderrama any wages for her work.

59. On or about October 10, 2024, Supik gave Defendants notice of her intent to resign her employment.

60. On or about December 30, 2024, one day before Supik's last day of employment, Defendants terminated her employment.

61. As of the date of this Complaint, Defendants have refused and failed to pay Supik's unpaid commissions for services provided.

62. Defendants knew or should have known that their failure to pay wages constituted a legal violation of applicable law.

## FIRST CAUSE OF ACTION
### (Willful Violation of the Minimum Wage Requirements of the Fair Labor Standards Act – All Defendants)

63. Plaintiffs incorporate the preceding paragraphs as if fully set forth.

64. WNCIM, the Practice, Mr. Balta, and Dr. Balta are joint employers under the FLSA.

65. During the entirety of Plaintiffs' employment, each Defendant was Balderrama and Supik's "employer" as defined by the FLSA.

66. During the entirety of Plaintiffs' employment, Defendants employed Balderrama and Supik within the meaning of the FLSA.

67. Plaintiffs were not exempt from minimum wage or overtime requirements of the FLSA.

68. Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs in accordance with the statutory minimum wage, in violation of 29 U.S.C. § 206.

69. Defendants' violations were knowing, willful, and not in good faith.

70. Defendants did not have reasonable grounds for believing their actions and omissions were not in violation of applicable law.

71. As a direct and proximate result of Defendants' violations of the FLSA, Plaintiffs have each been damaged, without limitation, in the principal amount of all wages earned and not paid, including, but not limited to, minimum wages, overtime wages, commissions, bonuses, and Paid Time Off (PTO)..

72. Plaintiffs are entitled to their unpaid wages, as well as liquidated damages, interest, costs and fees, and reasonable attorneys' fees as authorized by 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (Willful Violation of the Overtime Requirements of the Fair Labor Standards Act – All Defendants)

73. Plaintiffs incorporate the preceding paragraphs as if fully set forth.

74. WNCIM, the Practice, Mr. Balta, and Dr. Balta are joint employers under the FLSA.

75. During the entirety of Plaintiffs' employment, each Defendant was Balderrama and Supik's "employer" as defined by the FLSA.

76. During the entirety of Plaintiffs' employment, Defendants employed Balderrama and Supik within the meaning of the FLSA.

77. Plaintiffs were not exempt from minimum wage or overtime requirements of the FLSA.

78. Throughout Plaintiffs' employment by Defendants, Defendants failed to pay Plaintiffs overtime at one-and-one half times Plaintiffs' regular rate of pay for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207.

79. Defendants' violations were knowing, willful, and not in good faith.

80. Defendants did not have reasonable grounds for believing their actions and omissions were not in violation of applicable law.

81. As a direct and proximate result of Defendants' violations of the FLSA, Plaintiffs have each been damaged, without limitation, in the principal amount of all wages earned and not paid, including, but not limited to, minimum wages, overtime wages, commissions, bonuses, and Paid Time Off (PTO).

82. Plaintiffs are entitled to their unpaid wages, as well as liquidated damages, interest, costs and fees, and reasonable attorneys' fees as authorized by 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
### (North Carolina Wage and Hour Act – All Defendants)

83. Plaintiffs incorporate the preceding paragraphs as if fully set forth.

84. At all times during Plaintiffs' employment, each Defendant has acted as Plaintiffs' "Employer" as that term is defined by the North Carolina Wage and Hour Act, N.C. Gen. Stat 6 95-25.2.

85. Plaintiffs' commissions constituted compensation for labor or services rendered by Plaintiffs as employees of Defendants.

86. Throughout the relevant period, Defendants failed and refused to pay Plaintiffs their earned commissions under their respective Employment Agreements.

87. Defendants had a policy and practice of suffering or permitting Plaintiffs to work without timely paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

88. As alleged herein, Defendants failed to pay Plaintiffs minimum wage for all hours worked in violation of N.C. Gen. Stat. § 95-25.3.

89. As alleged herein, Defendants failed to pay Plaintiffs overtime at one-and-one-half their regular rate of pay for all hours worked in violation of N.C. Gen. Stat. § 95-25.4.

90. Defendants' failure to pay Plaintiff wages as promised, minimum wage, and overtime was done knowingly, intentionally, and willfully.

91. As a direct and proximate result of Defendants' actions, Plaintiffs have incurred damages in an amount to be determined at trial, in excess of $25,000 each, plus interest.

92. As a result, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages, including, but not limited to, all earned and unpaid minimum wages, overtime wages, commissions, bonuses, and Paid Time Off (PTO), plus interest at the legal rate from the date due until paid in full, double damages and attorneys' fees pursuant to N.C. Gen. Stat. § 95-25.22 et seq., and costs.

## FOURTH CAUSE OF ACTION
**(Breach of Contract – Defendant WNCIM)**

93. Plaintiffs incorporate the preceding paragraphs as if fully set forth.

94. The Balderrama Employment Agreement constituted a valid contract between Balderrama and WNCIM.

95. The Supik Employment Agreement constituted a valid contract between Supik and WNCIM.

96. Pursuant to their respective Employment Agreements, WNCIM was to pay both Plaintiffs 33% of the gross billings for services Plaintiffs rendered.

97. WNCIM failed and refused to pay Plaintiffs 33% of the gross billings for services Plaintiffs rendered during their employment with WNCIM.

98. As such, WNCIM breached the respective Employment Agreements.

99. As a direct and proximate result of WNCIM's actions, Plaintiffs have incurred damages in an amount to be determined at trial, plus interest.

## FIFTH CAUSE OF ACTION
### (Alternative Relief – Unjust Enrichment – All Defendants)

100. Plaintiffs incorporate the preceding paragraphs as if fully set forth.

101. Defendants willfully, wantonly, or recklessly deprived Plaintiffs of payments to which they were entitled for the work they performed for Defendants.

102. Defendants have retained the benefits of unpaid work and unpaid commissions for services rendered by Plaintiffs under circumstances which render it inequitable and unjust for Defendants to retain such benefits.

103. Defendants have been unjustly enriched for failing and refusing to pay Plaintiffs for work performed and for withholding commissions for services that Plaintiffs performed.

104. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have been damaged and are entitled to reimbursement, restitution, and disgorgement from Defendants of the full value of the benefits conferred by Plaintiffs.

105. Plaintiffs are entitled to reimbursement, restitution, and disgorgement of monies received by Defendants.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court grant the following relief:

1. An award for Plaintiffs against all Defendants, jointly and severally, for all unpaid wages, commissions, and overtime pursuant to the FLSA;

2. An award for Plaintiffs against all Defendants, jointly and severally, for liquidated damages, interests, costs and fees, and reasonable attorneys' fees as authorized by 29 U.S.C. § 216(b);

3. An award for Plaintiffs against all Defendants, jointly and severally, based on Defendants' violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq.;

2. An award for Plaintiffs against all Defendants, jointly and severally, for liquidated damages pursuant to the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.22(a1);

3. An award for Plaintiffs against all Defendants, jointly and severally, for Plaintiffs' reasonable attorneys' fees pursuant to the North Carolina Wage and Hour Act and all other applicable law;

4. An award for Supik against WNCIM based upon WNCIM's breaches of the Supik Employment Agreement;

10

5. An award for Balderrama against WNCIM based upon WNCIM's breaches of the Balderrama Employment Agreement;

6. In the alternative, a judgment against all Defendants, jointly and severally, for compensatory, consequential, punitive, and/or exemplary damages, including attorneys' fees and costs, for Defendants unjust enrichment.

7. That this Court tax the costs of this action against Defendants;

8. That Plaintiffs have and recover interest on all damages as allowed by law; and

9. For all other relief, both legal and equitable, which this Court deems just and proper.

This the 18th day of February, 2025.

**GARDNER SKELTON PLLC**

 /s/ Nicole K. Haynes
Jared E. Gardner (N.C. State Bar No. 28275)
Nicole K. Haynes (N.C. State Bar No. 47793)
Gabriela Thoren (N.C. State Bar No. 59653)
3746 N. Davidson Street
Charlotte, North Carolina 28205
Telephone: (704) 335-0350
Facsimile: (704) 936-0294
jared@gardnerskelton.com
nhaynes@gardnerskelton.com
bella@gardnerskelton.com
*Attorneys for Plaintiffs*